IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PARMINA VALENTINE,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No.  2:25-CV-0381-DMC

MEMORANDUM OPINION AND ORDER

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, ECF Nos. 6 and 7, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c).  Pending before the Court are the parties' briefs on the merits, ECF Nos. 12, 14, and 15.

The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

1

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the matter will be remanded for further proceedings.

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

Step 1      Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2      If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3      If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

Step 4    If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied;

Step 5    If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied.

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

3

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on March 8, 2022. See CAR 18.[1]  In the application, Plaintiff claims disability began on January 1, 2015. See id.  Plaintiff's claim was initially denied.  Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on November 30, 2023, before Administrative Law Judge (ALJ) Christopher Knowdell.  In a January 11, 2024, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

> 1.    The claimant has the following severe impairment(s): post-traumatic stress disorder, schizophrenia, asthma, peripheral neuropathy/joint pain, and hearing loss.
>
> 2.    The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations.
>
> 3.    The claimant has the following residual functional capacity: medium work; the claimant can occasionally and frequently lift up to 25 pounds; the claimant can frequently perform postural activities; the claimant should avoid concentrated exposure to noise above the moderate level; the claimant should avoid concentrated exposure to fumes, dust, odors, chemicals, and other similar pulmonary irritants; the claimant should avoid concentrated exposure to hazards such as working at unprotected heights or operating heavy machinery; the claimant is limited to simple repetitive tasks; the claimant can adapt to predictable workplace changes; the claimant is capable of superficial interactions with others.
>
> 4.    Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> See id. at 21-31.

After the Appeals Council declined review on December 6, 2024, this appeal followed.

///

///

///

///

---

[1]    Citations are to the Certified Administrative Record (CAR) lodged on March 28, 2025, ECF No. 8.

### III.  DISCUSSION

In her opening brief, Plaintiff argues as follows: (1) the ALJ failed to provide clear, convincing, and well supported reasons for discounting Plaintiff's allegations of mental dysfunction; (2) the ALJ failed to properly assess the lay witness report of Plaintiff's grandmother, Pauline Marie; (3) the ALJ failed to properly assess the medical opinion of Lauri Stenbeck, Ph.D.; and (4) the ALJ failed to discuss or evaluate the persuasiveness of the treating medical source opinion of Plaintiff's doctor, Fatemeh Ghaheri, M.D. See ECF No. 12, pg. 6.

### A.      Plaintiff's Subjective Statements and Testimony

The Commissioner determines the weight to be given to a claimant's own statements and testimony, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not afforded weight and what evidence undermines the testimony.  See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or

///

///

5

another symptom, the <u>Cotton</u> test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in <u>Cotton v. Bowen</u>, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. <u>See</u> <u>Bunnell</u>, 947 F.2d at 345-47. In weighing a claimant's statements and testimony, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. <u>See</u> <u>Smolen</u>, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. <u>See</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. <u>See</u> <u>Carmickle</u>, 533 F.3d at 1161 (citing <u>Swenson v. Sullivan</u>, 876 F.2d 683, 687 (9th Cir. 1989)).

At Step 4, the ALJ evaluated Plaintiff's subjective statements and testimony in determining Plaintiff's residual functional capacity. <u>See</u> CAR 24-30. The ALJ summarized Plaintiff's statements and testimony as follows:

> The claimant makes the following allegations regarding the intensity, persistence, and limiting effects of her symptoms. The claimant testified that her last college class was in 2021, as she was not able to continue after completing one semester. She noted that she is not sure why she is not working, but that she is either too slow or unprofessional, including that she does a wigging out dance and talks to herself a lot. She noted that she has a sharp pain in her heels related to Achilles tendonitis, and that she last underwent chemotherapy in 2010. Moreover, she stated that she has neuropathy in her joints daily, for which she takes anti-inflammatory medication, and that she takes monthly injectable medication for her psychiatric history. She testified that she naps, plays video games, and visits with family, and that she is limited to lifting 30 pounds. Further, the claimant testified that her medications cause tiredness, and that she sleeps when depressed on a bad day. The claimant reported that she becomes overwhelmed a lot as well. She has acknowledged that she completed the 12th grade.

6

> Additionally, the undersigned notes that the claimant had no obvious hearing issues during the telephone hearing. The undersigned recognizes observations by an Administrative Law Judge at a hearing do not, alone, constitute substantial evidence. However, said observations, when combined with other inconsistencies present in the record as to the degree of functional limitation allegedly experienced by the claimant, are worthy of consideration in reaching a determination.

> CAR 24-25.

> The ALJ concluded generally as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

> CAR 25.

The ALJ based this general conclusion on a detailed discussion of the longitudinal objective medical evidence, lay witness evidence, as well as the various medical opinions of record. See id. at 25-30. As the parties are familiar with the ALJ's hearing decision, this discussion is not reproduced here.

Plaintiff argues that the ALJ failed to provide sufficient reasons for rejecting Plaintiff's statements concerning mental dysfunction. See ECF No. 12, pgs. 6-13. The Court agrees. In response to Plaintiff's argument, the Commissioner posits four reasons purportedly relied upon by the ALJ for discounting Plaintiff's subjective statements and testimony. See ECF No. 14, pgs. 2-4. Specifically, the Commissioner asserts: (1) "The ALJ discounted Plaintiff's allegations *because* they were not entirely consistent with the objective medical evidence;" (2) "The ALJ also discounted Plaintiff's allegations *because* they were inconsistent with her treatment history;" (3) "Additionally, the ALJ discounted Plaintiff's statements *because* her reported activities showed a level of functioning that contradicted her claimed limitations;" and (4) "As another valid reason, the ALJ considered his own observations from the hearing." Id. (italics added).

/ / /

/ / /

7

At the outset, the Court rejects the Commissioner's assertion that the ALJ's comment concerning Plaintiff's mental functioning is supported by the ALJ's hearing observation. In the decision, the ALJ noted that Plaintiff ". . .had no obvious hearing issues during the telephone hearing." CAR 25. The ALJ's observation that Plaintiff could hear has no bearing on Plaintiff's allegations regarding mental functioning due to post-traumatic stress disorder and schizophrenia.

As to the remainder of the Commissioner's argument, as well as the ALJ's analysis, the Court sees a fatal flaw. In particular, while the Commissioner has assigned various reasons supporting the ALJ's general conclusion that Plaintiff's subjective statements and testimony are inconsistent with the medical evidence, the ALJ himself has not done so. It is the Commissioner – not the ALJ – who uses the word "because" in linking the various objective medical findings cited by the ALJ to Plaintiff's allegations. The ALJ's hearing decision as to Plaintiff's subjective statements describing her mental functioning consists of a list of objective medical findings, which are sometimes at odds with Plaintiff's allegations. This summary of the objective evidence, however, does not include any analysis as to which specific allegation concerning Plaintiff's mental functioning is undermined by a specific piece of the objective evidence. The matter will be remanded to allow the Commissioner to make explicit findings supported by specific, cogent reasons. See Rashad, 903 F.2d at 1231; Lester, 81 F.3d at 834.

**B.      Lay Witness Evidence**

The new regulatory framework, which applies to claims filed, as here, after March 27, 2017, identifies five categories of evidence: (1) objective evidence; (2) medical opinions; (3) "other" medical evidence; (4) evidence from nonmedical sources; and (5) prior administrative medical findings. 20 C.F.R. § 416.913(a)(1)–(5). With respect to evidence from nonmedical sources—the category under which lay testimony falls—the revised regulations expressly provide that the agency is "not required to articulate how we considered evidence from nonmedical sources using the requirements [set forth] in paragraphs (a) through (c) in this section." 20 C.F.R. § 416.920c(d). Thus, the revised regulations distinguish between evidence the ALJ is required to "consider" and evidence that requires the ALJ to "articulate" how the evidence was considered.

8

Based on a plain reading of the revised regulations, the new regulatory framework requires an ALJ to *consider* lay testimony but does not necessarily require the ALJ to articulate *how* it was considered.

At Step 4, the ALJ evaluated lay witness testimony offered by Plaintiff's grandmother, Pauline Marie. The ALJ stated as follows:

> The undersigned has considered the third-party statement completed by the claimant's grandmother (Ex. 1E, 7E). While third-party statements such as the one under consideration here can generally be helpful in making findings regarding the claimant's ability to complete activities of daily living; maintain, concentration, attention, and pace; engage in social activities; and adapt and manage him/herself, they are, pursuant to 20 CFR 404.1520c and 416.920c, considered evidence from a nonmedical source. As such, the undersigned need not articulate how this evidence was considered in terms of persuasiveness.

CAR 29-30.

Plaintiff argues that the ALJ committed legal error by failing to "provide germane reasons for discounting the report" ECF No. 12, pg. 15. Further, Plaintiff contends that the ALJ's failure to do so was not harmless and, according to Plaintiff, the ALJ "provided no other rationale for discounting Ms. Marie's report." Id. The Commissioner contends that Plaintiff's argument is inapposite because Plaintiff "primarily relies on cases decided before 2017 which applied this Circuit's 'germane reasons' standard for evaluating nonmedical source evidence…" ECF No. 14, pg. 6.

The Court agrees with the Commissioner. As outlined above, the new regulatory framework requires an ALJ to consider lay witness testimony but does not necessarily require the ALJ to articulate how such evidence was considered. Here, the ALJ satisfied his obligation under the new regulations by considering Ms. Marie's statement.

### C.    Medical Opinions

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Social workers are not considered an acceptable medical source. See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010). Nurse practitioners and physician assistants also are not acceptable medical sources. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so. See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

The Commissioner has promulgated revised regulations concerning how ALJs must evaluate medical opinions for claims filed, as here, on or after March 27, 2017. See 20 C.F.R. §§ 404.1520c, 416.920c. These regulations supersede prior caselaw establishing the treating physician rule which established a hierarchy of weight to be given medical opinions depending on their source. See id.; see also Jones v. Saul, 2021 WL 620475, at *9 (E.D. Cal. Feb. 17, 2021) ("In sum, because (1) the 2017 regulations are not arbitrary and capricious or manifestly contrary to statute, (2) the prior judicial construction was not mandated by the governing statutory language to the exclusion of a differing agency interpretation, and (3) the [treating-physician rule] is inconsistent with the new regulation, the court concludes that the 2017 regulations effectively displace or override [prior caselaw.]"). Thus, ALJs are no longer required to "defer to or give any specific evidentiary weight to" treating physicians over medical opinions from other sources. See Carr v. Comm'r of Soc. Sec., 2021 WL 1721692, at *7 (E.D. Cal. Apr.

10

30, 2021).

Under the revised regulations, the ALJ must evaluate opinions and prior administrative medical findings by considering their "persuasiveness." See Buethe v. Comm'r of Soc. Sec., 2021 WL 1966202, at *3 (E.D. Cal, May 17, 2021) (citing 20 C.F.R. § 404.1520c(a)). In determining how persuasive the opinion of a medical source is, an ALJ must consider the following factors:  supportability, consistency, treatment relationship, specialization, and "other factors." See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(b), (c)(1)-(5)).  Despite a requirement to consider all factors, the ALJ's duty to articulate a rationale for each factor varies. See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(a)-(b)).

Specifically, in all cases the ALJ must at least "explain how [she] considered the supportability and consistency factors," as they are "the most important factors." See Buethe, 2021 WL 1966202, at *4 (citing § 404.1520c(b)(2)).  For supportability, the regulations state: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive [the opinion] will be." See Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(1)).  "For consistency, the regulations state: '[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive [the opinion] will be.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(2)).  "The ALJ is required to articulate findings on the remaining factors (relationship with claimant, specialization, and 'other') only when 'two or more medical opinions or prior administrative medical findings about the same issue' are 'not exactly the same,' and both are 'equally well-supported [and] consistent with the record.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(b)(2) & (3)).

At Step 4, the ALJ evaluated the medical opinions of record. See CAR 28-29.  Plaintiff argues the ALJ erred as to Drs. Lauri Stenbeck and Fatemeh Ghaheri. See ECF No. 12, pg. 6.  As discussed above, the Court finds that a remand is appropriate to allow the Commissioner to address Plaintiff's subjective statements and testimony with more specificity. As discussed below, the Court also finds that a remand is further warranted because the ALJ

11

failed to discuss medical opinions contained in a July 2, 2020, report from Plaintiff's treating source. It is unnecessary, therefore, to address Plaintiff's contentions concerning the ALJ's analysis of opinions offered by Dr. Stenbeck.

The ALJ did not make any mention of Dr. Ghaheri in the decision or records from Plaintiff's treating source. According to Plaintiff, Dr. Ghaheri evaluated Plaintiff in July 2020 and stated "that Plaintiff's symptoms cause moderate to severe impairment in her functioning within interpersonal relationships, ability to maintain safety, and ability to live independently." See ECF No. 12 at 25 (citing CAR 530). Plaintiff asserts that the ALJ erred by failing to articulate the persuasiveness of Dr. Ghaheri's opinion or provide any discussion of the opinion, let alone a sufficient basis for discounting Dr. Ghaheri's assessed limitations. See id. at 26. The Commissioner contends that the note from Dr. Ghaheri at CAR 530 cited by Plaintiff does not contain any medical opinions. See ECF No. 14, pg. 13.

Plaintiff cites CAR 530 in support of her argument. This document is the first page of a detailed clinical assessment prepared on July 2, 2020, by Sacramento County DBHS, where Dr. Ghaheri was Plaintiff's treating provider. See CAR 530-541. Under a section entitled "Presenting Reasons," the document notes as follows:

> The client continues to experience the following symptoms and behaviors; post-traumatic stress (including emotional/physical dysregulation, intrusive memories, hyperarousal, avoidance, numbing, and dissociation), depression, anxiety, oppositional behaviors, difficulty managing anger effectively, impulsivity, challenges with interpersonal relationships, poor judgment, sleep difficulties. She also has a recent history of suicidal ideation, urges to self-harm, urges to set fires, stealing from family members, and auditory/visual hallucinations. *These symptoms cause moderate to severe impairments in her functioning within interpersonal relationships, ability to maintain safety, and ability to live independently.*
>
> CAR 530 (italics added).

The July 2, 2020, report also contains a description of objective findings on mental status examination. See id. at 538-41. Specifically, the report notes: (1) low energy level, (2) evasive eye contact, (3) dysphoric mood, (4) lethargic sensorium, (5) dissociative states, (6) hypervigilance, (7) impaired judgment and insight, (8) anxious, apathetic, and guarded reaction responses, (9) abrupt state of regulation, and (10) distracted attention span. See id.

12

As the Commissioner notes, the regulations define a "medical opinion" as a statement from a medical source about what the claimant can still do despite his or her impairments and whether the claimant has one or more impairment-related limitations or restrictions in physical and mental demands of work activities. See 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Here, while it is not clear whether Dr. Ghaheri prepared the July 2, 2020, report or made the clinical observations recorded therein, it does appear that the document nonetheless contains medical opinions from Sacramento County DBHS where Plaintiff was receiving regular primary care services. Specifically, after recording objective findings on mental status examination, the record reflects that an opinion was rendered – that Plaintiff's ". . .symptoms cause moderate to severe impairments in her functioning within interpersonal relationships, ability to maintain safety, and ability to live independently." The Court finds that this statement satisfies the regulatory definition of "medical opinion" in that it contains a statement as to moderate and severe limitations Plaintiff will experience in the work-setting in terms of interpersonal relations and ability to maintain safety. Whether the opinions expressed in the July 2, 2020, report are supported and what weight, if any, they are entitled to are questions this Court is unable to evaluate because the report was not discussed in the hearing decision. The matter will be remanded to allow the Commissioner to address this report in the first instance.

///

///

///

///

///

///

///

///

///

///

///

13

## IV.  CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1.      Plaintiff's motion for summary judgment, ECF No. 12, is granted;

2.      Defendant's motion for summary judgment, ECF No. 14, is denied;

3.      The Commissioner's final decision is reversed and this matter is remanded for further proceedings consistent with this order; and

4.      The Clerk of the Court is directed to enter judgment and close this file.

Dated:  January 22, 2026

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

14